UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNION ELECTRIC COMPANY d/b/a, | ) | |
| AMEREN UE, | ) | |
|     Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV00319 ERW |
| | ) | |
| GENERAL ELECTRIC | ) | |
| INTERNATIONAL, INC., | ) | |
|     Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment [doc. #63].

### I. BACKGROUND FACTS[1]

Plaintiff filed suit against Defendant seeking reimbursement of costs incurred as a result of delays in repairing a generator, known as the Labadie No. 4 unit ("the generator"). The generator was originally repaired by MD&A, a company which is not a party to this suit, who performed a rewind on the generator. However, when the generator was returned to Plaintiff it would not start due to excessive vibration. Plaintiff then contracted with Defendant to conduct further repairs of the generator. The generator was initially transported to Defendant's Missouri facility, where it was inspected.[2] The inspection resulted in a determination that the rewind work

---

[1] The Court's recitation of the facts is taken from the Parties' respective statement of facts. The Court notes where the Parties disagree.

[2] It is undisputed that while transporting the generator to Defendant's Missouri facility, the generator fell off the truck into a ditch where it was submerged in water and mud. It is unclear what effect, if any, this had on the condition of the generator, however, it is immaterial since the Parties do not dispute whether the work was completed, but rather the timeliness of such work.

1

performed by MD&A had to be redone, and that the generator would require high speed balancing, to correct the excessive vibration. The work was to be performed either at Defendant's Chicago, Illinois facility, or its Schenectady, New York facility.

On May 11, 2002 the generator arrived at Defendant's Chicago facility where the rewind work was performed. The generator was subsequently transported to Schenectady, New York where the high speed balancing was to take place. This work was completed on June 11, 2002. Following the completion of this work it was necessary to perform a Hipot test.[3] However, Plaintiff requested that the generator be shipped immediately to its Labadie facility, and that the final Hipot test be performed on site. Plaintiff had expressed concern that if the generator did not ship that day, June 11, 2002, there would be some delay due to heavy weight travel restrictions that prohibited transport over the weekend. Defendant agreed to ship the generator immediately, and that it would complete the remaining work at Plaintiff's facility, including the Hipot test.

During the final Hipot test, on June 14, 2002, the generator "went to ground" and as a result the generator had to be rewound a second time. This required shipment of the generator back to Defendant's Chicago, Illinois facility. It is undisputed that Defendant's performed the additional rewind work at no additional charge. However, the Parties disagree over whether this additional work constituted a warranty repair. The generator was eventually repaired, and was returned to Plaintiff on July 22, 2002.

## II. PROCEDURAL HISTORY

Plaintiff filed suit on February 24, 2006 alleging two claims, breach of contract and breach of warranty. Discovery was conducted, and on February 27, 2007, Plaintiff filed a motion for partial summary judgment, seeking a ruling from the Court regarding the controlling contract

---

[3]Hipot is short for high potential.

terms. The Court did not grant summary judgment, concluding that there were material questions of fact regarding the formation of the contract and therefore the controlling terms was a question of fact for the jury. Following this Court's ruling, an amended case management order was issued, and the Parties conducted additional discovery. The matter is now set for trial on a three week docket beginning on September 15, 2008. It is undisputed that the breach of contract claim will be tried, however, Defendant has filed a motion for partial summary judgment on Plaintiff's breach of warranty claim. That motion is fully briefed and the Court will address it at this time.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a

3

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

The Parties do not dispute that had the generator successfully completed the final hipot test, it would have been returned to service on June 21, 2002. However, due to the generator failing that test, the rewind work had to be performed a second time, resulting in a delay in the return of the generator to service until July 22, 2002. The issue presented to the Court in

4

Defendant's motion is whether the second rewind of the generator was done pursuant to a warranty, if so then Defendant may be responsible for lost profit damages as a result of the delay. Defendant argues that there can be no breach of warranty claim, because the Defendant had never relinquished control of the generator back to the Plaintiff before the error in the original rewind was discovered, and the work redone. Plaintiff's dispute that the Plaintiff had to be in control of the generator in order for a warranty claim to attach, and argue to the contrary, that the rewind work was completely separate from the balancing, and that the rewind work had been completed at the time the error was discovered resulting in a warranty repair.

The Defendant has asserted that no warranty claim can be asserted because no delivery of the item was made, a standard under the Uniform Commercial Code ("UCC"). Plaintiff responds that it has stated a claim, not under the UCC, but under the terms of the contract and under Missouri common law. The Court will first address Plaintiff's assertion that the contract language provides a basis for their breach of warranty claim, and that under those terms there is a material issue of fact regarding breach. The Plaintiff's contract terms provide:

> Seller warrants that the goods and services supplied will conform to applicable specifications, instructions, drawings, data and samples and will be of good material and workmanship. These warranties shall be in addition to all other warranties expressed, implied or statutory.

Plaintiff's Complaint, p. 19, ¶3. The Court concludes that Plaintiff has presented evidence sufficient to preclude summary judgment on this basis. Plaintiff has provided deposition testimony of James Doyle, which states that Defendant did not charge Plaintiff for the second rewind, because it was a warranty repair. *Pl.'s Response in Opp. to Def.'s Mot. for Partial Summ. Judg.*, Ex. D, p.79, line 10. Defendant provides conflicting testimony by James Porter, the project manager, who states in his deposition that the work on the generator had never been completed, "it never went into warranty . . . ." *Def.'s Reply in Support of their Mot. for Partial Summ.*

*Judg.*, Ex. B, p. 179, line 9. The Parties also disagree over the scope of the work that was contracted. Plaintiff cites to the deposition testimony of Charles Naslund, in support of its position that the two repair items were separate jobs, with separate schedules for completion and separate charges. *Pl.'s Response in Opp. to Def.'s Mot. for Partial Summ. Judg.*, Ex. K, p. 64, lines 13-21. Defendant again disagrees, arguing it was all part of one contract for repairs to the generator. Considering this conflicting evidence, the Court cannot conclude as a matter of law that the product was not under warranty within the terms of the warranty provision; a jury must determine whether Plaintiff's have proved their claim for breach of warranty, once a determination has been made regarding the applicable contract terms.

Even though the Court has concluded that summary judgment is inappropriate on Plaintiff's breach of warranty claim, it is necessary to address Defendant's assertion that outside the terms of the contract, Plaintiff is unable to prove a breach of warranty claim. In the event that the jury determines that Defendant's contract terms are controlling, not Plaintiff's, the Court must decide whether it is appropriate to submit Plaintiff's breach of warranty claim to the jury under Missouri law. Defendant argues that the law clearly provides that a warranty cannot begin until delivery occurs, and that delivery did not occur until all work on the generator had been performed. Plaintiff argues that the law cited by Defendant applies only to the UCC, and that under the common law, a cause of action has been asserted.

Missouri law, which codifies portions of the UCC, provides that "the general rule is that the breach occurs, and the cause accrues, 'when tender of delivery is made . . . .'" *Binkley Co. v. Teledyne Mid-America Corp.*, 460 F.2d 276, 277 (8th Cir. 1972) (quoting Mo. Rev. Stat. § 400.2-752(2)). However, the Missouri code specifically states that "this article applies to transactions in goods . . . ." Mo. Rev. Stat. § 400.2-102. The contract at issue was a service

contract, not a contract to sell goods, and therefore the Missouri code provisions, and cases relied upon by Defendant, are inapplicable.

Missouri law does, however, impose a warranty on services performed, stating that "when a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work he undertakes will be accomplished in a skillful and proper workmanlike manner." *Biggerstaff v. Nance*, 769 S.W.2d 470, 473 (Mo. Ct. App. 1989); *see also Crank v. Firestone Tire & Rubber Co.*, 692 S.W.2d 397, 401 (Mo. Ct. App. 1985); *C.L. Maddox, Inc. v. Benham Group, Inc.*, 89 F.3d 592, 600 (8th Cir. 1996).

The evidence is undisputed that upon receipt of the generator, on July 22, 2002, the generator was in full working order. However, the generator was not in full working order when it was originally delivered, which is evidenced by its failing the final hipot test. This raises the same fact question addressed above under the Court's analysis of an express warranty under the terms of the contract, whether the two repairs were separate jobs, and if so, was the second rewind done pursuant to a warranty obligation. These are factual questions that must be decided by a jury, not the Court.

## V. CONCLUSION

The Court concludes that a material issue of fact remains regarding Plaintiff's warranty claim. Plaintiff has presented evidence that the two jobs at issue were separate, and because the rewind was not completed when the generator failed the final hipot test, the second rewind by Defendant was a warranty repair. Defendant has responded with deposition testimony to the contrary. The Court further concludes that while there cannot be a claim for breach of warranty under the UCC, as the code is inapplicable to a contract for services, there remains a claim under the terms of the contract, if Plaintiff's terms are found by the jury to be applicable, and under

7

Missouri common law. For these reasons summary judgment on Plaintiff's breach of warranty claim is inappropriate, and Defendant is not entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment [doc. #63] is **DENIED**.

Dated this 8th Day of August, 2008.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　E. RICHARD WEBBER
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE